UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON JUREK, | ) | CASE NO.  5:13 CV 1784 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAVID D. DOWD, JR. |
| v. | ) | |
| | ) | |
| AMERICAN TELEPHONE AND | ) | **MEMORANDUM OPINION** |
| TELEGRAPH COMPANY, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

*Pro se* plaintiff Jason Jurek ("plaintiff" or "Jurek"), filed this action under the

Telecommunications Act, 47 U.S.C. § 222, and the Cable Communications Policy Act ("Cable

Act"), 47 U.S.C. § 551, against Anthony Finlaw ("Finlaw") and the American Telephone and

Telegraph Company ("AT&T") (collectively "defendants").  In the complaint, plaintiff alleges

defendants unlawfully accessed his personal computer in violation of his privacy rights under

state and federal law and in breach of their contractual obligations, causing him economic injury.

He seeks monetary relief.  For the reasons that follow, this action is dismissed.

## II. BACKGROUND

Jurek's complaint alleges he purchased AT&T's "U-Verse" service for his Chesterland,

Ohio residence.  (Compl. at 4.)  He states "U-Verse" included internet, cable, and telephone

services.  (*Id.*)  In the summer of 2011, Jurek requested that AT&T repair a "malfunctioning

internet gateway" or "modem" at his home.  (*Id.* at 3.)

(5:13 CV 1784)

On August 9, 2011, Finlaw, an AT&T "premises technician," responded to Jurek's service call.  (*Id.*)  Upon Finlaw's arrival at Jurek's house, Jurek's adult son greeted Finlaw, permitted him to enter the home, and directed him to the modem.  Jurek was not at home at the time, but phoned his son and requested to speak with Finlaw.  During that conversation, Jurek told Finlaw that several other AT&T technicians had visited the home but were unable to resolve the issues with his modem.  Finlaw purportedly assured Jurek he would fix the problem.  The complaint states that "[a]t no point during the conversation did Jurek give Finlaw, nor did Finlaw request, permission to turn on, access, inspect and/or connect to" Jurek's personal computer, which was located near the modem, or any of Jurek's other electronic devices.  (*Id*. at 4.)  Jurek states further that no other AT&T technician ever "accessed and/or requested permission to access Jurek's electronic devices[]" while repairing his modem.  (*Id.*)

The complaint asserts Finlaw turned on Jurek's personal computer without his permission and bypassed Jurek's password to gain access to the computer's contents.  Finlaw opened a browser window and discovered a previously-visited website containing the word "lolita" in the web address.  (*Id*. at 5.)  He then closed the browser window and spent approximately thirty minutes "searching" through Jurek's computer files and folders, which Jurek alleges "contained private, sensitive information not available to the general public."  (*Id.*)  During this "search," Finlaw discovered photographs, which he believed to be child pornography.  (*Id.*)  Finlaw subsequently left Jurek's home and reported his findings to his supervisor at AT&T.

The following day, August 10, 2011, Finlaw and a representative from AT&T's Asset

-2-

(5:13 CV 1784)

Protection Department contacted the Chesterland Township Police Department, and notified

them of Finlaw's findings at Jurek's residence.  On August 23, 2011, Jurek was arrested and, on

September 21, 2011, he was indicted in federal district court on one count of receipt of child

pornography in violation of 18 U.S.C. § 2252(a)(2) (Count 1) and one count of possession of

child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2).  *See United States v.*

*Jurek*, No. 1:11-cr-433, ECF No. 9 (N.D. Ohio Sept. 21, 2011) (Pearson, J.).

Jurek's complaint states that following his arrest, "an independent forensic review was

conducted on his computer," and except for "'ghost' files in the unallocated space on the hard

drive" depicting images of child pornography," " it was determined that no images of child

pornography were on the computer."  (Compl. at 5-6.)  He further claims that, during a

suppression hearing in his federal criminal proceedings, Finlaw testified his supervisor was not

concerned with his actions at Jurek's residence and that he was unaware of any AT&T policies

related to "customer/subscriber privacy" or as to "how he should act and conduct himself when

inside the property of a customer/subscriber."  (*Id*. at 6.)

The complaint directs the Court to the transcript of Finlaw's testimony as "part of the

publicly available record," and to Judge Pearson's opinion denying Jurek's motion to suppress

the fruits of Finlaw's "search," which "outline[s] the occurrences described [in the complaint]."

(*Id*. at 7.)  Jurek's motion to suppress argued Finlaw was acting as an agent of law enforcement

and that his search was unreasonable.  *Jurek*, No. 1:11-cr-433, ECF No. 33 at 4-5. The transcript

from the suppression hearing indicates Finlaw testified that he had not received any training

from AT&T suggesting he conduct "searches" akin to his search of Jurek's computer on August

-3-

(5:13 CV 1784)

9, 2011. *Jurek*, No. 1:11-cr-433, ECF No. 39 at 8.  He also stated that in most cases, it is not

necessary for AT&T service technicians to access a customer's personal computer to make

service repairs and, instead, he utilizes his own laptop computer when performing service calls.

*Id.* at 11.

 However, Finlaw testified that on the day in question, his laptop computer's ethernet

connection was not functioning, and "in order to correctly configure [Jurek's] router . . . [he] did

have to use [Jurek's] computer." *Id.* at 11-13.[1]  He connected to the modem through a browser

window on Jurek's computer and directed the modem to recognize the new cable connection,

which he had run from the exterior phone box to the modem.  *Id.* at 18-19.  When he opened the

browser window, he saw the term "Lolita" in the browser history, which he understood as a

reference to a "little woman or little girl" and which led him to believe there may be illegal

material on Jurek's computer.  *Id.* at 23.  Finlaw stated he had previously used other customers'

personal computers to confirm the success of modem repairs, but had never before viewed a

customer's browser history that caused him similar concerns.  *Id.* at 22.  He testified that he then

clicked the  "start menu" on the computer screen, opened a file marked "Picture Files," and

found pornographic images of what he believed to be children.  *Id.* at 24-25.  Finlaw admitted it

was not necessary to open these files to ensure that the modem was working properly.

 Following the hearing, Judge Pearson denied Jurek's motion to suppress, finding the

hearing testimony did not established Finlaw was acting "on behalf of," "under the direction of,"

or "at the acquiescence of" law enforcement when he observed the pornographic images and

---

[1] In contradistinction to Jurek's allegation, Finlaw stated he did not have to enter a password to
access the computer.  *Jurek*, No. 1:11-cr-433, ECF No. 39 at 20.

(5:13 CV 1784)

subsequently reported his observations to others at AT&T and, ultimately, to the local police and the federal authorities.  *Jurek*, No. 1:11-cr-433, ECF No. 33 at 7.

On November 6, 2012, Jurek entered a guilty plea as to Count 1 of the Indictment.  *Jurek*, No. 1:11-cr-433 (Minutes of Proceedings Nov. 6, 2012).   During the change of plea hearing, Jurek admitted to using a computer at his home to access the internet, visiting website and online forums containing images of minors engaged in sexually explicit conduct, and downloading said images onto an external hard drive and his personal computer.  *Jurek*, No. 1:11-cr-433, ECF No. 70 at 37-38 (Transcript of Change of Plea Hearing).  On March 14, 2013, the court sentenced Jurek to 61 months incarceration to be followed by a 10 year term of supervised release as to Count 1, and Count 2 of the Indictment was dismissed.  *Jurek*, No. 1:11-cr-433, ECF No. 60 (Judgment), *as amended by* ECF No. 64 (Amended Judgment Apr. 8, 2013).  On March 29, 2013, Jurek filed a notice of appeal to the Sixth Circuit Court of Appeals.  His appeal remains pending.

In the present action, Jurek sues Finlaw and AT&T for violations of federal privacy laws and state common law.  In Count I of the complaint, he alleges AT&T violated its duty to maintain and protect his privacy as a customer/subscriber under the Telecommunications Act when AT&T permitted the unauthorized access of his personal computer by its employee, Finlaw.  (Compl. at 7-8.)  Jurek claims to have suffered "an economic injury" as a result.  (*Id*. at 8.)  In Count II of the complaint, he asserts defendants' conduct also violated the Cable Act; again causing him "economic injury."  (*Id*.)  Counts III through VII, allege state law claims for breach of contract, breach of oral contract, breach of implied-in-fact contract, invasion of

-5-

(5:13 CV 1784)

privacy, and breach of fiduciary duty.  (*Id*. at 8-14.)

### III.  LAW AND ANALYSIS

**A.  Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  Principles requiring generous construction of *pro se* pleadings are not without limits*.  Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  A district court is not required to conjure up questions never squarely presented to it or to construct full blown claims from sentence fragments.  *Id.*

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  Assuming all the allegations in the complaint are true, the factual allegations must be sufficient to raise the right to relief above the speculative level.  *Id.* at 555.  A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a complaint, the Court must construe the pleading in the light most favorable to the

-6-

(5:13 CV 1784)

plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

**B. Telecommunications Act Claims**

  Jurek's complaint alleges AT&T is liable for violations of the privacy provisions of the

Telecommunications Act, 47 U.S.C. § 201, *et seq*.  Title 47 United States Code § 222(a)

mandates, in relevant part, that "[e]very telecommunications carrier has a duty to protect the

confidentiality of proprietary information of, and relating to[] . . . [its] customers . . . ."  47

U.S.C. § 222(a).  Further, § 222(c)(1) outlines the privacy requirements for telecommunications

carriers, providing that:

> Except as required by law or with the approval of the customer, a
> telecommunications carrier that receives or obtains customer proprietary network
> information [("CPNI")] by virtue of its provision of a telecommunications service
> shall only use, disclose, or permit access to individually identifiable customer
> proprietary network information in its provision of (A) the telecommunications
> service from which such information is derived, or (B) services necessary to, or
> used in, the provision of such telecommunications service, including the
> publishing of directories.

47 U.S.C. § 222(c)(1).  The Telecommunications Act provides individuals with a private right of

action for violations of it provisions, stating, in relevant part:

> Any person claiming to be damaged by any common carrier subject to the
> provisions of this chapter may . . . bring suit for the recovery of the damages for
> which such common carrier may be liable under the provisions of this chapter, in
> any district court of the United States of competent jurisdiction . . . .

47 U.S.C. § 207.

  Here, Jurek alleges AT&T breached its duties under the Telecommunications Act by

permitting Finlaw to improperly access his personal computer.  He alleges he suffered "an

economic injury" as a result.  (Compl. at 8.)  Further, given a liberal reading of the complaint, he

-7-

(5:13 CV 1784)

impliedly alleges AT&T improperly disclosed this private information to law enforcement.[2]

With regard to Finlaw's purported unauthorized access of Jurek's personal computer files, it is evident from the complaint and the record of Jurek's criminal proceedings that when Finlaw accessed those files, he acted outside the scope of his employment.  Under the Telecommunications Act, a common carrier is only liable for the acts, omissions, or failures of its officers, agents, or employees acting within the scope of their employment.  47 U.S.C. § 217.[3]

Whether an employee was acting within the scope of his employment is a question of law governed by the law of the state in which the conduct occurred.  *Kinsey v. Kinsey*, 98 F. Supp. 2d 834, 836 (N.D. Ohio 2000) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996)).  Under Ohio law, an employee acts within the scope of employment if his conduct (1) is of the kind which he is employed to perform; (2) occurs substantially within the authorized limits of time and space; and (3) is motivated, at least in part, by a purpose to serve the employer.  *Allstate Ins. Co. v. Quick*, 107 F. Supp. 2d 900, 905 (S.D. Ohio 1999) (citing *Anderson v. Toeppe*, 116 Ohio App. 3d 429, 436 (1996)).  "[A]n employee acts within the scope

---

[2]    To the extent Jurek seeks to hold Finlaw liable under the Telecommunications Act for his conduct, the complaint fails to state a cognizable claim for relief.  Section 222 only applies privacy duties to "telecommunications carrier" defendants, not individuals.  *See Weinstein v. AT&T Mobility LLC*, 553 F. Supp. 2d 637, 640-41 (W.D. Va. 2008).  No private right of action exists against Finlaw for violations of the Act's provisions.

[3]    Section 217 provides,

> In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

47 U.S.C. § 217.

-8-

(5:13 CV 1784)

of his authority during the course of employment even though acting intentionally or maliciously." *Id.* (citing *RMI Titanium*, 78 F.3d at 1143).  However, "[a]n employer is not liable for the independent acts of employees that in no way facilitate or promote the employer's business." *Id.* (citing *Heuton v. Anderson*, 75 F.3d 357, 361 (8th Cir. 1996)).

Here, it is neither alleged nor conceivable that Finlaw was employed by AT&T to search out illegal materials on its subscribers' personal computers or that Finlaw acted at the direction, tacit or otherwise, of AT&T when he accessed Jurek's personal photos.  Moreover, Jurek has not alleged any facts from which it could reasonably be inferred that Finlaw's conduct in any way facilitated or promoted AT&T's business.  Finlaw testified during Jurek's criminal proceedings that he had not received any training from AT&T on how to conduct searches of customers' computers, and he admitted it was not necessary to open Jurek's personal files to ensure the success of his repairs to Jurek's modem.  As Finlaw was acting outside the scope of his employment when he opened and viewed Jurek's picture files, he acted in an individual capacity and, therefore, AT&T is not liable for Finlaw's conduct under the Telecommunications Act.

Nor is AT&T liable for its disclosure of Jurek's personal information or CPNI[4] to law

---

[4]     The Telecommunications Act defines CPNI as:

> (A) information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship

47 U.S.C. § 222(h)(1).  The Court need not decide which types of information allegedly disseminated by AT&T in this case constitutes CPNI because, even if the Court assumes *arguendo* that AT&T disseminated Jurek's CPNI, as discussed herein, Jurek has failed to state a claim for relief under § 222(c).

-9-

(5:13 CV 1784)

enforcement.  Indeed, federal law mandates that electronic communication service providers,

such as AT&T, report child pornography to law enforcement authorities, *see* 18 U.S.C. §

2258A,[5] and affords such providers with immunity from suit in state and federal court for claims

"arising from the performance of the reporting . . . responsibilities" imposed by law.  18 U.S.C. §

2258B(a).[6]

_____

[5]    Section 2258A(a)(1), provides, in relevant part:

> Whoever, while engaged in providing an electronic communication
> service or a remote computing service to the public through a facility or
> means of interstate or foreign commerce, obtains actual knowledge of
> any facts or circumstances described in paragraph (2) [that involves
> apparent child pornography] shall, as soon as reasonably possible–
>
> (A) provide to the CyberTipline of the National Center for Missing and
> Exploited Children, or any successor to the CyberTipline operated by
> such center, the mailing address, telephone number, facsimile number,
> electronic mail address of, and individual point of contact for, such
> electronic communication service provider or remote computing service
> provider; and
>
> (B) make a report of such facts or circumstances to the CyberTipline, or
> any successor to the CyberTipline operated by such center.

47 U.S.C. § 2258A(a)(1).

[6]    Section 2258B(a) provides:

> Except as provided in subsection (b), a civil claim or criminal charge
> against an electronic communication service provider, a remote
> computing service provider, or domain name registrar, including any
> director, officer, employee, or agent of such electronic communication
> service provider, remote computing service provider, or domain name
> registrar arising from the performance of the reporting or preservation
> responsibilities of such electronic communication service provider,
> remote computing service provider, or domain name registrar under this
> section, section 2258A, or section 2258C may not be brought in any
> Federal or State court.

47 U.S.C. § 2258B(a).

-10-

(5:13 CV 1784)

Finally, the complaint fails to state a claim under the Telecommunications Act because Jurek does not claim any specific damages.  In regards to damages, the Telecommunications Act requires that a common carrier in violation of its provisions "shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation . . . ."  47 U.S.C. § 206.  In order to state a claim for relief, Jurek must allege and prove specific, recoverable damages flowing from AT&T's purported violations of the Act, *see Weinstein v. AT&T Mobility LLC*, 553 F. Supp. 2d 637, 640 (W.D. Va. 2008) (dismissing complaint where plaintiff did not allege any "injury to his person, property, health, or reputation"), and cannot recover "presumed damages."  *Conboy v. AT&T Corp.*, 241 F.3d 242, 250-51 (2d Cir. 2001) (holding that the Telecommunications Act does not authorize recovery of presumed damages, instead a private party seeking relief under that act must allege and prove specific damages flowing from the alleged violations of the act) (citations omitted).

The only damages claimed by Jurek herein is "an economic injury."  (Compl. at 8.)  This allegation is too vague to support a claim for relief under the Telecommunications Act. *Twombly*, 550 U.S. at 555.  Further, insofar as Jurek seeks to recover his payments to AT&T for its "U-Verse" service, those payments cannot form the basis for damages because they were not made in exchange for AT&T's compliance with the Act; rather, Jurek's monthly payments were

---

Section 2258B(b) carves out an exception to the limited liability provided in subsection (a) if the electronic service provider or any of its employees engages in "intentional misconduct; or acted or failed to act – with actual malice; with reckless disregard to a substantial risk of causing injury without legal justification; or for a purpose unrelated to the performance of any responsibility under this section[] . . . ."  47 U.S.C. § 2258B(b).  However, none of these exceptions is applicable here.  As discussed, *supra*, Finlaw's purported unauthorized access of Jurek's personal computer files was outside the scope of his employment and cannot be attributed to AT&T.

-11-

(5:13 CV 1784)

made for AT&T's services, which he received.  AT&T's alleged failure to comply with the

Telecommunications Act did not deprive Jurek of the value those services.  *See Conboy*, 241

F.3d  at 250 (customers' monthly payments for long-distance service not recoverable as damages

because customers did not make monthly payments to AT&T for compliance with the

Telecommunications Act).  "Moreover, . . . AT&T must comply with the Telecommunications

Act not because it receives monthly payments from its customers, but because it is a common

carrier governed by that statute."  *Id.*  (citation omitted).   Consequently, it cannot be argued that

plaintiff['s] monthly payments were, in part, consideration paid to AT&T for compliance with

Section 222."  *Id.*

Accordingly, for all the foregoing reasons, Jurek's claim under the Telecommunications

Act (Count I) is dismissed for failure to state a claim upon which relief can be granted.

**B.  Cable Act Claims**

In Count II of his complaint, Jurek alleges defendants' conduct violated the Cable Act, 47

U.S.C. § 551.  Section 551 is entitled "protection of subscriber privacy,"and it bars a "cable

operator" from using the "cable system" to collect "personally identifiable information"

regarding a subscriber without the subscriber's prior written or electronic consent, unless the

information is collected for certain allowable purposes.  47 U.S.C. § 551(b).[7]  Similarly, §

551(c)(1) prohibits a cable operator from disclosing such information without the subscriber's

prior consent and further requires that a cable operator "shall take such actions as are necessary

---

[7]   Section 551(b)(2) permits a cable operator's collection of a subscriber's personally identifiable
information by a"in order to – (A) obtain information necessary to render a cable service or other
service provided by the cable operator to the subscriber; or (B) detect unauthorized reception of
cable communications." 47 U.S.C. § 551(b)(2).

(5:13 CV 1784)

to prevent unauthorized access to such information by a person other than the subscriber or cable operator."[8]

As a preliminary matter, to the extent Jurek seeks to hold Finlaw individually liable under the Cable Act for his conduct, the complaint fails to state a cognizable claim for relief. Section 551 only applies privacy duties to "cable operator" defendants. The Cable Act defines a "cable operator" as:

> any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system.

47 U.S.C. § 522(5). Here, the complaint does not allege that Finlaw provided Jurek with cable service, had any financial interest in a cable system, or otherwise controlled or was responsible for the management or operation of a cable system. Consequently, no action exists against Finlaw for violations of the Cable Act's privacy provisions.

The Court need not decide whether AT&T is a cable operator under the statute, because even assuming *arguendo* that AT&T fits that definition, its alleged collection of information in this case had nothing whatsoever to do with the use of a cable system[9] or cable service.[10]

---

[8]     Section 551(c)(2) summarizes the instances where a cable operator may reveal such personally identifiable information, noting that such information may be disclosed for legitimate business activities and to governmental entities under certain circumstances. 47 U.S.C. § 551(c)(2).

[9]     The Cable Act defines a "cable system" as:

> a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community, but such term does not include (A) a facility that serves only to retransmit the television signals of 1 or more television broadcast

-13-

(5:13 CV 1784)

Because Jurek has alleged that AT&T's employee collected his personally identifiable information, i.e., his private digital photograph files, directly from his personal computer, as opposed to through the use of a "cable system," the statute does not provide a cause of action against AT&T.  It follows that AT&T did not run afoul of the prohibition in § 551(b)(1) against a "cable operator" using a "cable system" to "collect personally identifiable information" concerning subscribers.  47 U.S.C.A. § 551(b)(1).  *See Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d 271, 276 (6th Cir. 2006) (broadband internet service provider's temporary storage of internet protocol and universal resource locator information did not constitute violation of Cable Act's privacy provisions; broadband internet service is not a "cable service" within the meaning of the Act, even if delivered via cable that also provided separate cable service)

Finally, AT&T is not liable under the Cable Act for its disclosure of Jurek's personal information to law enforcement.  As already discussed, *supra*, federal law affords AT&T with immunity from suit in state and federal court for claims "arising from the performance of the

---

stations; (B) a facility that serves subscribers without using any public right-of-way; (C) a facility of a common carrier which is subject, in whole or in part, to the provisions of subchapter II of this chapter, except that such facility shall be considered a cable system (other than for purposes of section 541(c) of this title) to the extent such facility is used in the transmission of video programming directly to subscribers, unless the extent of such use is solely to provide interactive on-demand services; (D) an open video system that complies with section 573 of this title; or (E) any facilities of any electric utility used solely for operating its electric utility system[.]

47 U.S.C. § 522(7).

[10]    The Cable Act defines a "cable service" as, "(A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service[.]"  47 U.S.C. § 522(6).

(5:13 CV 1784)

reporting . . . responsibilities" imposed by 18 U.S.C. § 2258A.  *See* 18 U.S.C. § 2258B(a).

Consequently, for all the foregoing reasons, Jurek's claim under the Cable Act (Count II) is dismissed for failure to state a claim upon which relief can be granted.

## C.  State Law Claims

The remainder of Jurek's complaint alleges state law claims for breach of contract against AT&T and for breach of fiduciary duty and invasion of common law privacy against AT&T and Finlaw.  Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, may exercise discretion in hearing State law matters.  *Id.* at 726.  In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.  *Id.* Having dismissed plaintiff's federal law claims, this Court declines jurisdiction to hear plaintiff's State law claims against defendants.  Accordingly, plaintiff's state law claims are subject to summary dismissal under § 1915(e).

(5:13 CV 1784)

## IV. CONCLUSION

For all the reasons stated herein, this action is dismissed pursuant to 28 U.S.C. § 1915(e) without prejudice to any valid state law claims that plaintiff may have against defendants under the facts alleged.  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[11]

IT IS SO ORDERED.[12]


September 19, 2013                              s/David D. Dowd, Jr.
Date                                           David D. Dowd, Jr.
                                               U.S. District Judge

---

[11]  28 U.S.C. § 1915(a)(3) provides, in pertinent part, "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."

[12]  The Court acknowledges the valuable assistance of the office of the *pro se* law clerks in the preparation of this opinion.

-16-